**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION**

_____
In re:                                       :
                                             :
CRISTINA OGALIN,                             :        Case No.: 10-52433 (AHWS)
                                             :        Chapter 7
        Debtor.                              :
_____       :
THE CADLE COMPANY,                           :
        Plaintiff,                           :
                                             :
        v.                                   :        Adv. Pro. No.: 11-5002
                                             :
CRISTINA OGALIN,                             :
                                             :
        Defendant.                           :

*Appearances*:
Paul N. Gilmore, Esq.                        :        For Plaintiff
Updike, Kelly & Spellacy, PC                 :
100 Pearl Street                             :
Hartford, CT                                 :

Roy W. Moss, Esq.                            :        For Defendant
143 Rowayton Avenue                          :
Norwalk, CT                                  :

**MEMORANDUM OF DECISION AND ORDER
ON DENIAL OF DISCHARGE UNDER § 727(a)**

I. Introduction

This decision is limited to the portion of Count III in the above adversary proceeding ("Action") in which the Plaintiff, The Cadle Company ("Cadle"), seeks to deny the Defendant/Debtor ("Debtor") a discharge under § 727(a)(2)(A).[1] (*See* ECF No.

---

[1] At the commencement of the December 4, 2013 trial, the Court bifurcated the three-count Action, limiting the trial to Cadle's Third Count under § 727(a). (*See* Dec. 4, 2013 Trial Tr. at 37, 39-40 (ECF No. 160).) Its First and Second Counts were brought

1.) The issue here is whether the Debtor's actions in response to Cadle's efforts to enforce and collect a judgment debt were done with the intent to hinder, delay or defraud. For the reasons that follow, judgment shall enter in favor of Cadle.[2]

## II. Background

On June 28, 2002, the trustee in the Debtor's father's chapter 7 case, pending in the Hartford Division of this Court, commenced a fraudulent transfer action against the Debtor and her mother. *See In re Frank F. Ogalin*, Case No. 00-32944 (ASD) (Bankr. D. Conn. 2000) ("Fraudulent Transfer Action"). On May 14, 2003, that court approved the sale of the Fraudulent Transfer Action to Cadle, who was substituted as the plaintiff. *See id.* (ECF No. 59)("Order Granting Motion to Sell Cause of Action"). On August 27, 2003, Cadle filed a motion in the District Court for a withdrawal of the reference of the Fraudulent Transfer Action, which was granted on July 26, 2004. *See Cadle Co. v. Ogalin, et al.*, No. 3:04-cv-1225 (JBA), Endorsement Order (ECF No. 7) (D. Conn. July 27, 2004). On September 24, 2007, after a jury trial on Cadle's amended complaint (*see id.*, ECF No. 213), in which the jury affirmatively answered special interrogatories that transfers to the Debtor where fraudulent, judgment entered in Cadle's favor in the amount of $587,206 ("Judgment"). (*See id.*, ECF Nos. 233, 234, 237; *see also* Tr. Exh. 2 (jury verdict with special interrogatories)).

This Chapter 7 case was commenced on October 7, 2010. On January 3, 2011, Cadle commenced this Action challenging the Debtor's discharge under the Bankruptcy Code §727(a)(2)(A).[3] On August 26, 2013, Cadle filed a Motion for Partial Summary Judgment (*see* ECF No. 99) and a supporting Local Rule 56(a)(1) Statement regarding

---

under § 523 of the Bankruptcy Code.

[2] Cadle's Third Count also sought a denial of discharge under § 727(a)(5). As will be discussed *infra*, because the Court conclude that Cadle has met its burden under § 727(a)(2)(A), it is not necessary to address that portion of Count III which relates to § 727(a)(5).

[3] As noted, *supra* at note 1, Cadle's counts pursuant to § 523, challenging the dischargeability of the Judgment, were bifurcated.

undisputed facts (*see* ECF No. 101). The Debtor filed a responsive Local Rule 56(a)(2) Statement (*see* ECF No. 121) in which she admitted paragraphs 1 through 33 of the Cadle's stated facts. (*See* ECF No. 121.) On November 20, 2013, the Court granted Cadle's motion. (*See* ECF No. 146, "Stipulated Order".) For convenience, the Court restates, the relevant portion of the Stipulated Order:

> First, the Statements of Fact set forth in Paragraphs 1 through 33, inclusive, of [Cadle's] Statement (the "**Established Facts**"), are not genuinely in dispute (the same having been admitted by the [Debtor],) and are hereby determined and ordered to be facts established in this case for all purposes, including, but not limited to, the trial on the merits [of this Action] (and any effect such facts may have on such further findings and/or the ultimate conclusion that may be reached by the court at the trial on the merits);
> Second, the Established Facts are hereby reproduced in this order, and are as follows[:]
> 1. [Cadle and [the Debtor] were parties to a civil action in the United States District Court, District of Connecticut, entitled, *The Cadle Company v. Cristina Ogalin, et al*, which civil action bears Civil Action No. 3:04-cv-1225 (JBA) (hereinafter, the "**Civil Action**").
> 2. [Cadle] was also the Plaintiff in the Civil Action.
> 3. [The Debtor] was a defendant in the Civil Action.
> 4. The Civil Action was tried to a jury.
> 5. The jury in the Civil Action answered Special Interrogatories and completed a verdict form.
> 6. In accordance with the Special Interrogatories and completed verdict, *the jury found that [the Debtor] was a transferee of fraudulent transfers, and that she did not receive the fraudulent transfers in good faith or for reasonably equivalent value*; consequently, the jury assessed damages against [the Debtor] and in favor of Cadle in the amount of $587,206.00.
> 7. On September 24, 2007, the district court entered a judgment in the Civil Action in favor of Cadle and against [the Debtor], awarding damages in the amount of $587,206.00.
> 8. The same day, a corrected judgment was entered by the court to correct a scrivener's error in the spelling of the first name of [the Debtor].

9. On September 25, 2007, the court entered an Amended **Judgment**, reaffirming the judgment amount, as aforesaid, and providing for interest on the judgment.

10. On November 3, 2008, in the Civil Action the [Debtor] was ordered to make weekly payments on the judgment to [Cadle], which payments were required to be made in the amount of $952.78 per week, commencing on November 10, 2008.

11. The [Debtor] did not make any of the required weekly payments.

12. On July 8, 2009, in the Civil Action the court granted [Cadle's] application for a **Wage Execution** against the earnings of the [Debtor].

13. On July 8, 2009, in the Civil Action the court issued a Writ of Wage Execution in favor of [Cadle] and against the [Debtor].

14. On or about July 15, 2009, the Writ of Execution process package was served by a state marshal upon **Drywall Construction**, by service of the same with and in the hands of [the Debtor], its then-President and person in charge at the time of service.

15. Cadle sought (on November 18, 2009) and obtained (on January 12, 2010) a turnover order (the "Ruling") in connection with Drywall Construction's failure and refusal to honor the Wage Execution.

16. In the Ruling, the court ordered Drywall Construction to deliver to counsel for [Cadle], all sums due to [Cadle] from August 2009 through January 12, 2010 for the duly executed wage execution served upon it for its employee, [the Debtor], *without regard for any exemption that [the Debtor] has waived by not filing an exemption form*[4] (the "Payment Order").

17. Drywall Construction did not comply with the Payment Order.

18. The Wage Execution was effective as of August, 2009 (the "Effective Date"), and [the Debtor], through counsel, conceded the same to the court.

---

[4] *See* Civil Action, "Ruling on [Cadle]'s Application for Order in Aid of Wage Execution" (ECF No. 267) (noting the Debtor "failed to file timely a brief in opposition or appear at a hearing" on Cadle's "Motions for Order of Weekly Payments" and that because the Debtor did not file a claim of exemptions, she "is entitled to no exemptions from wage garnishment . . .").

19. The Wage Execution remained in effect from the Effective Date until the date and time when [the Debtor] filed her voluntary bankruptcy petition on October 7, 2010.

20. At all times from July, 2009 through the filing of her bankruptcy petition on October 7, 2010, [the Debtor] held the office of President of Drywall Construction.

21. Cadle commenced a contempt proceeding arising out of the failure and refusal by Drywall Construction to abide by the Ruling and the Payment Order set forth therein.

22. Drywall Construction opposed the contempt motion by the filing of opposition papers, including a Memorandum of Law in Opposition, on March 5, 2010.

23. As of March 5, 2010, the Wage Execution had been in effect since August 7, 2009, and during that period of time there were 30 paydays at Drywall Construction (each of which 30 paydays is referred to herein as a "**Payday**").

24. On each Payday, [the Debtor]'s weekly disposable earnings were $807.75 (the "**Disposable Earnings**").

25. On each Payday, the amount that was payable on the Wage Execution was not less than $201.94 (the "**Execution Sum**"), which sum composed a part of the [Debtor's] Disposable Earnings.

26. On or about each Payday, the entire amount of the Disposable Earnings were paid to [the Debtor], including the component of the Disposable Income that constitutes the Execution Sum.

27. *On or about each Payday, [the Debtor] caused or directed Drywall Construction to pay to herself the entire amount of the Disposable Earnings and to not honor the Wage Execution*.

28. *With respect to each Payday, [the Debtor] caused or directed Drywall Construction to pay to herself the entire amount of the Disposable Earnings and to not honor the Wage Execution*.

29. As of March 5, 2010, the aggregate Execution Sum as to which [the Debtor] directed or caused Drywall Construction to not honor the Wage Execution, and to instead pay over to herself (over said 30 weeks), equaled the sum of not less than $6,058.20 (the "Execution Arrearage").

30. *[The Debtor] used the Execution Arrearage, which she diverted to herself, to pay for her personal, family*

> *and/or household living expenses.*
>     31. *[The Debtor] admits that she knew Drywall Construction had a legal obligation to honor the Wage Execution.*
>     32. *[The Debtor] admits that she directed Drywall Construction to not honor the Wage Execution, and that she took her full wages for herself, which she then spent.*
>     33. On October 7, 2010,[5] [the Debtor] filed a voluntary bankruptcy petition in this court.

(Stipulated Order[6] (emphasis added; bold font added[7])(admitted into evidence as Trial Exh. 1).) On the basis of the Stipulated Order, which established the Judgment debt owed by the Debtor to Cadle, and her admission that she did not pay that debt and instead diverted the Court-designated funds to herself, Cadle commenced this Action under §727(a)(2)(A) to deny the Debtor's discharge.

## III.  Discussion

It is well settled that "[o]ne of the central purposes of the Bankruptcy Code and the privilege of discharge is to allow the 'honest but unfortunate debtor' to begin a new life free from debt." *D.A.N. Joint Venture v. Cacioli (In re Cacioli)*, 463 F.3d 229, 234 (2d Cir.2006) (quoting *Grogan v. Garner,* 498 U.S. 279, 286-87 (1991)).  Because "the denial of a debtor's discharge 'imposes an extreme penalty for wrongdoing,' [s]ection 727 must be construed strictly against those who object to a debtor's discharge and

---

[5] October 7, 2010 was also Drywall's and the Debtor's extended deadline in the Civil Action to file their response to Cadle's motion for an arrest warrant ("Arrest Warrant Motion"), which sought the Debtor's arrest, as Drywall's president, as a sanction "in order to secure compliance with clear orders of the [district] Court relating to a wage execution, with respect to which there has been already a finding of contempt of court." (Civil Action, ECF No. 275 at 1).

[6] The Stipulated Order also provided that it was "entered without prejudice to the right of the [Debtor], upon showing good cause, to seek to rescind or clarify any of the admissions before trial." *Id.* at 6.  The Court notes the Debtor did not attempt to exercise that right.

[7] Bolded terms of art defined and/or used in the Stipulation Order will be used in this memorandum of decision.

liberally in favor of the . . . [debtor].'" *Cadle Co. v. Ogalin (In re Ogalin)*, 303 B.R. 552, 557 (Bankr. D. Conn. 2004)(Dabrowski, J.) (quoting *In re Chalasani*, 92 F.3d 1300, 1310 (2d Cir. 1996)); *see also In re Boyer*, 367 B.R. 34, 43 (Bankr. D. Conn. 2007). A party seeking the denial of a debtor's discharge must prove its case by a preponderance of the evidence. *See Pisculli v. T.S. Haulers, Inc. (In re Pisculli)*, 408 F. App'x 477, 479 (2d Cir.2011) (citing *Grogan*, 498 U.S. at 287); *see Republic Credit Corp. I v. Boyer (In re Boyer)*, 328 F. App'x 711, 714 (2d Cir.2009).

Section 727(a)(2)(A) provides in relevant part:

> (a) The court shall grant the debtor a discharge, unless—
>     (2) *the debtor, with intent to hinder, delay, or defraud*
>     *. . . a creditor. . .* has transferred [or] removed
>     . . . or *has permitted to be transferred [or]*
>     removed
>         (A) property of the debtor, within one year before the date of
>         the filing of the petition;
> * * *

11 U.S.C. §§ 727(a)(2)(A)(emphasis added). To succeed in this § 727(a)(2)(A) Action, Cadle must prove each of the following factors: (1) the debtor transferred or removed or caused the transfer or removal of (2) her property (3) within one year before she filed her petition (4) with the intent to hinder or delay Cadle. *See Boyer*, 367 B.R. at 43 (quoting *Rhode Island Depositors Econ. Prot. Corp. v. Hayes (In re Hayes)*, 229 B.R. 253, 259 (1st Cit. B.A.P. 1999)).

*Analysis of the Four Elements of § 727(a)(2)A)*

A.  Elements 1–3

Cadle has satisfied its burden of proving the first three elements with the Established Facts in the Stipulated Order. That is, on a weekly basis, the Debtor caused Drywall to transfer to her all of her Disposable Earnings (her property) within the one-year period of her October 7, 2010 bankruptcy filing. *See* Established Facts, ¶¶ 23-32.

B. Element 4

The intent factor is the only remaining issue to be determined. A party's intent "is rarely subject to direct proof." *Boyer*, 328 F. App'x at 715. Therefore, "courts look to see if certain 'badges of fraud,' which are strong indicia of actual fraudulent intent, are present." *In re Vidro*, 497 B.R. 678, 687 (Bankr. E.D.N.Y. 2013); *see also Boyer*, 328 F. App'x at 715 (citing *Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582 (2d Cir.1983)). Those badges of fraud include "[t]he retention of possession, benefit or use of the property in question," and "the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors." *Kaiser*, 722 F.2d at 1582–83. The requisite intent "to delay or hinder a creditor may also be found where a debtor deals with his assets in a manner designed and intended to avoid seizure or attachment by one or more of his creditors. Moreover, just one wrongful act may be sufficient to show actual intent although a continuing pattern of wrongful behavior is a stronger indication." *Warchol v. Barry (In re Barry)*, 431 B.R. 533, 540 (Bankr. D. Mass 2010), *aff'd* in part and *rev'd* in part (on other grounds), 451 B.R. 654 (1st Cir. B.A.P. 2011).

The Debtor was the only witness at the December 4-5, 2013, trial. (*See* Dec. 4, 2013 Trial Tr. (ECF No. 160); Dec. 5, 2013 Trial Tr. (ECF No. 161).) During her testimony, she admitted that she habitually caused her company, Drywall, to disregard the Wage Execution by having the company pay her all of her Disposable Earnings. (*See* Dec. 4, 2013 Trial Tr, at 42-44.) She repeatedly acknowledged that all of the Disposable Earnings for each Payday was being paid to her.

> Q: You understood you had a legal obligation to have them [(*i.e.*, the Execution Sums)] paid over to Cadle, and you thwarted that obligation, correct?
> A: I held my wages for myself, correct.
> Q: And so you knew that that money was going to you and not to Cadle on a weekly basis, correct?
> A: It was going to me.

(*Id.* at 58:25-59:6; *see also id.* at 45:18-22, 46:16-19, 48:9-25, 49:16-50:3.) The Debtor also testified that she "needed the money to live . . . and the portion that would have

went [*sic*] to Cadle was a big portion that I needed." (Dec. 5, 2013 Trial Tr. at 48:20-22 (ECF No. 161).)

Thus, by her own words, the Debtor stated she knew that when she decided to cause Drywall to pay her instead of Cadle, she would be ignoring a legal obligation. Moreover, the evidence that this occurred 30 times strengthens Cadle's argument that the Debtor intended to hinder and delay the payment of the district court Judgment debt. The Debtor's attempt to rebut that evidence by claiming she did not intend to delay or hinder Cadle was either non-existent or not believable.

For example, the Debtor did not, and could not, offer evidence that ignoring the Wage Execution Order did not have the indisputable effect of delaying the payment of Cadle's Judgment. As to hindering Cadle, the Debtor testified that when she caused her company to pay her, she was actually helping Cadle because she was improving the equity in her real property ("Property") on which Cadle had a judgment lien. (*See id.* at 51:12-13.) She also testified that she "had to keep the money" (Dec. 4, 2013 Trial Tr. at 44:9), and that since Cadle had a judgment lien on her Property, she "felt by keeping the money . . . and paying [her] mortgage every month, [she] was [advancing the] interest [of] Cadle and [her]self". (*Id.* at 45:8-10; *see also id.* at 49:2-4, 51:12-13.) The problem with that argument is that her own pre-bankruptcy acts and her bankruptcy schedules contradict that assertion, since both pre-petition and in her bankruptcy schedules she stated that there was no equity to protect.

Cadle put into evidence its May 21, 2008 state court foreclosure complaint against the Debtor (*see* Trial Exh. 4), pursuant to which it sought to foreclose the Judgment recorded against the Debtor's Property, and the Debtor's May 19, 2009 answer thereto (*see* Trial Exh. 5). The Debtor's answer asserted defenses that there was no equity in the Property reachable by Cadle's Judgment (*see id.,* "Third Defense" ("there is no net equity value for the lien")) and that it was subject to her homestead exemption (*see id.,* "First Defense"). Moreover, it should be noted that Cadle's interest was behind a first mortgage, which was undersecured. (*See* Trial Exh. 3 (Sch. D, listing the value of the Property at $325,000, with a 1st mortgage of $335,000, of which $10,000 was unsecured).) Indeed, in her Chapter 7 bankruptcy schedules, the Debtor

disclosed that there was no equity in the Property. (*See id.*) Therefore, while using the district court-ordered Execution Sums to pay down the first mortgage might have placed that mortgagee in a less unsecured position, it would not have made Cadle the holder of a secured claim.

Moreover, the Court finds the Debtor's claim that she was helping Cadle by not paying it the court-ordered Execution Sums was not only discredited by the facts, *see supra*, but also by her incredible testimony. For example, the Debtor was not credible when she claimed that her September 2010 partial payments on the Wage Execution were unrelated to Cadle's August 27, 2010 Arrest Warrant Motion. Given the timing of the Debtor's sudden payments, after *30* contiguous missed payments, her claim of coincidence belies credulity. (*Cf.* Trial Exhs. 20, 21, 22, 23 (respectively, Arrest Warrant Motion and letters concerning modest partial payments on wage execution); *see also* Dec. 5, 2013 Trial Tr. at 67-72.) *See In re Boyer*, 384 B.R. 44, 47-48 (D. Conn. 2008) ("the issue of intent depends 'largely upon an assessment of the credibility and demeanor of the debtor'")(further citation omitted). Rather, at the very least, by flagrantly and repeatedly causing the Wage Execution order to be defied and then spending her entire weekly Disposable Earnings as she decided, the Debtor intended to delay Cadle receiving payments on the Judgment, if not hinder its collection efforts altogether.

## IV. Conclusion

Accordingly, Cadle has met its burden of proving the Debtor intended to delay paying Cadle on the Judgment, if not hinder Cadle. The Debtor has failed to rebut Cadle's cause of action.

Therefore, IT IS ORDERED that judgment shall enter in favor of Cadle. An order denying the Debtor's discharge shall enter simultaneously herewith.

This Memorandum of Decision constitutes the Court's findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052.

Dated this 23rd day of October, 2015 in Bridgeport, Connecticut.

BY: *Alan H. W. Shiff*
Alan H. W. Shiff
United States Bankruptcy Judge